# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

CASE NO. 2:14-CV-206-FtM-38DN

JOHN DOE #1 through #5, and
JANE DOE #1 and #2,

     Plaintiffs,

v.                                                                    **JURY TRIAL DEMANDED**

C&C AGRICULTURAL FARMS LLC,
a Florida limited liability company, ERNESTO
RUBEN CORDERO, JR. AKA
ERNESTO RUBEN CORDERO BENITEZ
 AKA "EL CUBANO", CARLOS A. RODRIGUEZ
and REYES TAPIA-ORTIZ AKA ARTURO TAPIA,

     Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

     Plaintiffs, seven undocumented agricultural laborers from Guatemala and Mexico, bring

this human trafficking action for damages and for judicial vindication of wrongs committed

against them by Defendants, who hired plaintiffs utilizing fraud and deception, failed to pay

them the wages promised, did not treat them humanely or lawfully, sexually harassed one of

them, and kept Plaintiffs working in the fields by displays of force and threats of harm and

deportation.  Due to the sensitive nature of this case, and the heightened privacy interests

involved, plaintiffs seek to proceed anonymously, as set forth in the motions filed on April 9 and

May 15, 2014.  Hence, plaintiffs are hereafter identified as JOHN DOE #1 through #5 and JANE

DOE #1 and #2 (collectively, "Plaintiffs").  Plaintiffs allege as follows:

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

## PRELIMINARY STATEMENT

1.     Plaintiffs were recruited along with other undocumented workers from day labor lines and in local stores in the Immokalee and Clewiston, Florida area to work for area farms, including Defendant C&C Farms in its agricultural fields and packing house located in an area of the Middle District of Florida known as "Devils Garden."

2.     Defendants targeted Plaintiffs for recruitment because they are undocumented aliens who possess limited education, work, and language skills and support families who rely on their support for basic needs. As a result, Plaintiffs' employment options are limited and they were very vulnerable and susceptible to Defendants' control and manipulation.

3.     Defendants enticed Plaintiffs to work for them by promising Plaintiffs a substantial number of hours of work each week, with a daily or weekly salary at the minimum hourly wage rate or higher.

4.     Defendants kept one of their promises: once hired by Defendants, Plaintiffs worked approximately ten to twelve hours per day in the fields planting, picking, and weeding various crops including tomatoes, cucumbers, squash, and peppers. During the harvesting season, Plaintiffs also labored an additional three to eight hours each day in the packing house. Two plaintiffs also drove and transported workers to the fields.

5.     However, as set forth in detail below, Defendants routinely failed to pay Plaintiffs the promised hourly rate, failed to pay Plaintiffs for the hours they worked, failed to comply with federal and state labor laws, and failed to provide humane working conditions, namely water, accessible toilets, breaks, and shelter from the sun. Defendants also failed to comply with federal and state pesticide laws by exposing Plaintiffs to chemicals while working in the fields.

2

6.     Plaintiffs continued to work for Defendants because Plaintiffs and the families they support are financially desperate and also because they were afraid to quit or even complain. This was because Defendants routinely displayed and brandished guns in the workplace, threatened workers for not working fast enough or for asking to be paid for work as agreed, and threatened physical harm or deportation to workers who otherwise complained about the sporadic payments they received, the conditions under which they worked, or who sought to find other employment.

7.     Adding to the resulting climate of fear in the work place, Defendant Reyes Tapia-Ortiz continually sexually harassed one female Plaintiff and threatened to have her deported or cause harm to her or her boyfriend for rejecting his advances and to track her down and kill her if she ever left his crew.

## PARTIES

8.     Plaintiffs JANE DOE #1, JANE DOE #2, and JOHN DOE #4 are Guatemalan citizens. Plaintiffs JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #5 are Mexican citizens. Some Plaintiffs understand and speak a Mayan or indigenous language. All of the Plaintiffs can converse in basic Spanish, but not in English.

9.     Defendant C&C Agricultural Farms LLC ("C&C Farms") is a Florida limited liability company with its principal office located at 7035 Gleneagle Drive, Miami Lakes, FL 33014.

10.     C&C Farms engages in farming activity on approximately 200 acres of land in Central Florida and employs agricultural workers to plant, harvest, sort, and pack vegetables including, but not limited to, tomatoes, squash, peppers, and cucumbers. At all relevant times, such vegetables were regularly packed at C&C Farms in boxes without identifying writing,

3

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

loaded in tractor trailer trucks not owned by C&C Farms, and transported to repacking locations. C&C Farms sells its products and ships them to buyers throughout the United States. C&C Farms is engaged in interstate commerce and its workers are similarly engaged in the production of goods for interstate commerce, or activities that are closely related and directly essential to the production of such goods. During some of the relevant time period, C&C Farms contracted with Rosemont Farms, a California-based company, to market, transport, and sell their produce.

11.     Defendant Ernesto Ruben Cordero, Jr. ("Cordero") is a manager of C&C Farms.

12.     Defendant Carlos Rodriguez ("Rodriguez") is also a manager of C&C Farms. According to Florida state records, Rodriguez is also the Registered Agent for C&C Farms.

13.     Cordero and Rodriguez established Plaintiffs' terms of employment, controlled Plaintiffs' work schedules, provided instructions to the crew leaders, and supervised Plaintiffs' work. Cordero and Rodriguez were "employers" of Plaintiffs within the meaning of FLSA, 29 U.S.C. §§ 201, *et seq.* and AWPA, 29 U.S.C. §§ 1801, *et. seq.*

14.     Defendant Reyes Tapia-Ortiz ("Tapia-Ortiz") was employed by C&C Farms to provide workers to perform agricultural labor for C&C Farms.

15.     Tapia-Ortiz functioned as a farm labor contractor as defined under the AWPA, 29 U.S.C. § 1802(7), in that, for a fee, he recruited, solicited, hired, transported, maintained work hours and records, and paid wages to workers, including Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5. Despite this, Tapia-Ortiz was neither licensed nor registered as a farm labor contractor, as required by law, according to the Florida Department of Business & Professional Regulation ("DBPR") records, and was therefore not

4

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

authorized to perform the functions of a farm labor contractor nor authorized to transport workers.

16.     Non-defendant crew leader N.C. was an agent, employee, and representative of C&C Farms.  Like Tapia-Ortiz, non-defendant crew leader N.C. functioned as a farm labor contractor as defined under the AWPA, 29 U.S.C. § 1802(7), in that, for a fee, he recruited, solicited, hired, transported, maintained work hours and records, and paid wages to Plaintiffs JOHN DOE #1 and JOHN DOE #2.  Despite this, non-defendant crew leader N.C. was neither licensed nor registered as a farm labor contractor, as required by law, and therefore was not authorized to perform the functions of a farm labor contractor nor authorized to transport workers.

17.     Cordero, Rodriguez and Tapia-Ortiz were "joint employers" of Plaintiffs as defined in 29 C.F.R. § 500.20(h).

18.     Non-defendant crew leader N.C. was an "employer" of JOHN DOE #1 and JOHN DOE #2, within the meaning of FLSA, 29 U.S.C. §§ 201, *et seq.* and AWPA, 29 U.S.C. §§ 1801, *et. seq.*

19.     Tapia-Ortiz was an "employer" of JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 within the meaning of FLSA, 29 U.S.C. §§ 201, *et seq.* and AWPA, 29 U.S.C. §§ 1801, *et. seq.*

## JURISDICTION AND VENUE

20.     The jurisdiction of this Court is invoked pursuant to  28 U.S.C. § 1331, as this action involves questions of federal law; 28 U.S.C. § 1350, as this action involves a civil action by an alien for a tort in violation of the law of nations and treaties of the United States; 18 U.S.C. § 1595(a), as this action involves a civil action for a violation of the Trafficking Victims

5

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

Protection Act (TVPA); 29 U.S.C. § 1854(a), as this action involves violations of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA); and 29 U.S.C. § 216(b), as this action arises under the Fair Labor Standards Act (FLSA). This Court has supplemental jurisdiction over the related state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because they arise from the same common nucleus of operative facts that support the federal claims.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because a substantial part of the events giving rise to Plaintiffs' claims, including Defendants' unlawful employment practices, were committed in Collier, Hendry, and other Florida counties that comprise part of the Middle District of Florida.

## FACTUAL BACKGROUND

### <u>Obtaining Labor and Services Through False Promises</u>

22.     Some time prior to October, 2009, Cordero hired non-defendant crew leader N.C. to engage in the following farm labor contractor activities on behalf of C&C Farms: recruiting, soliciting, hiring, employing, furnishing, and transporting migrant agricultural workers. Sometime prior to November, 2010 Cordero hired Tapia-Ortiz to engage in the abovementioned farm labor contractor activities.

23.     In or about October 2009, non-defendant crew leader N.C. recruited Plaintiff JOHN DOE #1 to work at C&C Farms, falsely promising to pay him the applicable minimum wage for all the hours he worked.

24.     In or about March 2011, non-defendant crew leader N.C recruited Plaintiff JOHN DOE #2, in or near Clewiston, Florida, promising to pay him on a daily basis for approximately eight hours work per day.

6

25. Between approximately the spring of 2008 and February 2012, Tapia-Ortiz recruited undocumented foreign nationals from day labor lines and stores in the Immokalee and Clewiston, Florida area, and elsewhere, enticing Plaintiffs JANE DOE #1, JANE DOE #2 JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 with various false promises including wages higher than they were earning and more work hours than they were presently working.

26. In or about the summer of 2011, Tapia-Ortiz enticed Plaintiff JANE DOE #1 to leave her job, falsely promising to pay her more than the applicable minimum wage for all the hours she worked.

27. In or about July 2011, Tapia-Ortiz enticed Plaintiffs JOHN DOE #3 and JANE DOE #2 to come work for him at C&C Farms by falsely promising long work hours per day and higher hourly wages than they had been earning.

28. In or about the summer of 2011, when Plaintiff JOHN DOE #5 was doing seasonal work in North Carolina, Tapia-Ortiz began to call Plaintiff JOHN DOE #5 to lure him into working for him at C&C Farms with false promises about wages, the length of the work day, and tasks JOHN DOE #5 would perform.

29. In or about February 2011, Tapia-Ortiz recruited JOHN DOE #4 at a store in Clewiston, falsely promising JOHN DOE #4 an hourly wage higher than the amount he was earning, at least 12 hours of work a day for seven days every week, and payment every Friday.

### Plaintiffs Not Paid Minimum Wage or Promised Wages, Not Paid Regularly or Provided Statement of Hours and Wages, and Denied Humane Working Conditions in Violation of FLSA and AWPA

30. Once hired, Plaintiffs worked for C&C Farms in stifling hot fields with no shelter from the sun, no breaks except for a brief time to eat lunch or dinner, limited water, and no

7

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

nearby toilets. On average during high harvest season, Plaintiffs worked seven days a week, ten to twelve hours a day, followed by three to eight hours per day of work at the packing house.

31.    Plaintiffs were often forced to work double shifts in order to be paid. Tapia-Ortiz stated that if Plaintiffs did not work the night shift in the packing house, they would not be paid for their work during the day shift in the fields. Plaintiffs working night shifts in the packinghouse had no access to sanitary toilets and had to sneak outside to relieve themselves in order to avoid reprimand.

32.    Plaintiffs were not protected from the harm of pesticides on the fields because Defendants sprayed crops while Plaintiffs were working in close proximity. Plaintiffs suffered headaches, burning eyes, skin rashes, and nausea. This happened several times a month.

33.    Plaintiffs and other workers often waited a few hours to be transported home after working in the fields or the packinghouse and were never paid for their wait time.

34.    Plaintiffs were never paid either the applicable federal or state minimum wage as required by law, much less the higher hourly wage falsely promised when recruited, for all the hours they worked or were in service to Defendants.

35.    Plaintiffs were also not paid regularly as required by law. Instead, they were paid sporadically, sometimes daily, other times weekly or bi-weekly.

36.    Tapia-Ortiz and non-defendant crew leader N.C. purported to keep a record of the hours Plaintiffs worked. However, Defendants never allowed Plaintiffs to review the crew leaders' work records for accuracy, and Plaintiffs were routinely underpaid for the hours they worked.

37.    Plaintiffs and other workers never received a written statement as required by law itemizing hours worked, amounts produced, earnings, and deductions.

8

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

38.     Between late 2009 and early 2011, Cordero or crew leader N.C. directly supervised Plaintiffs JOHN DOE #1 and JOHN DOE #2 at C&C Farms and assigned them work each day.

39.     Between the summer of 2011 and February 2012, Cordero and Tapia-Ortiz supervised Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 in the fields for ten to twelve hours per day and approximately three to eight additional hours per day at the packinghouse during harvest.

40.     Between approximately the summer of 2011 and January 2012, workers were not provided with food and had limited access to water.  Instead, Tapia-Ortiz sold beer and soda, charging workers approximately $2.50 per beer and $1.50 for generic soda.  Tapia-Ortiz's common law wife also charged $7.00 for small lunches that she sold to the workers.  Tapia-Ortiz deducted the cost of drinks from the workers' earnings whenever they were paid.

41.     Between approximately the spring of 2011 and February 2012, Tapia-Ortiz required workers to pay him in cash for transportation to and from C&C Farms, totaling $5 a day or between $25 to $35 each week,

42.     At all relevant times, Tapia-Ortiz transported and directed other workers including Plaintiff JOHN DOE #3 and JOHN DOE #5 to drive Plaintiffs and workers to and from C&C Farms and the packing house each work day, although none of the drivers were legally licensed or authorized as required by AWPA to transport workers.  The vans were not registered, as required by AWPA, to transport migrant agricultural workers to and from work and the vans lacked a sufficient number of seats or seatbelts for all of the people being transported.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

43.     Plaintiff JOHN DOE #1 worked at C&C Farms for two seasons:  one beginning in the fall of 2009 planting seedlings for approximately two months, approximately ten hours a day, including waiting time, and again in early 2010 for several months harvesting and weeding crops, approximately ten to twelve hours a day.  He also worked in the fall of 2010 planting seedlings and in early 2011 harvesting plants.  Plaintiff JOHN DOE #1 was paid sporadically and was not paid the applicable minimum wage for all the hours he worked and provided services to all of the Defendants.

44.     Plaintiff JOHN DOE #2 worked at C&C Farms from March to May 2011, approximately twelve hours a day, including waiting time, and was not paid the applicable minimum wage for all the hours he worked and provided services to all of the Defendants.

45.     Plaintiff JOHN DOE #3 worked at C&C Farms for various periods between approximately July 2011 and January 2012, approximately 17 hours a day, usually seven days a week.  He was not paid the applicable minimum wage, much less the higher hourly wage he was promised, and was not paid for all the hours he worked and provided services to all of the Defendants.

46.     Plaintiff JOHN DOE #3 approached Tapia-Ortiz several times complaining about the incorrect wages he received.  Tapia-Ortiz responded with threats and excuses, including a deliberate display of the guns that Tapia-Ortiz kept in his transport van.

47.     Plaintiff JOHN DOE #4 worked at C&C Farms between approximately February 2011 to April 2011, and three weeks in early 2012, for approximately 17 to 19 hours a day, usually seven days a week.  He was not paid at the applicable minimum wage or the higher hourly wage rate he was promised, nor was he paid for all the hours he worked and provided services to all of the Defendants.

10

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

48.     Plaintiff JOHN DOE #5 worked for Tapia beginning in 2008 at various agricultural and forestry operations in Florida. Plaintiff JOHN DOE #5 worked at C&C Farms from the spring of 2011 to approximately December 2011. He worked for 13 to 14 hours per day, and sometimes 20 to 21 hours per day, despite Tapia-Ortiz's promise that the job would require only 10-12 hours of work per day. JOHN DOE #5 worked in the fields and the packing house and also drove the other workers to and from the farm, even though Tapia-Ortiz initially stated the job would require only driving. JOHN DOE #5 received only $40-45 per day, which was less than the $12 hourly wage Tapia-Ortiz promised, and less than the applicable minimum wage of $7.25 per hour. Also, Tapia-Ortiz failed to pay JOHN DOE #5 for the hours he worked as a driver.

49.     Plaintiff JANE DOE #1 worked seven days a week at C&C Farms in July 2011 at the packing house from approximately 5:00 PM to 12:00 AM or 1:00 AM. From about July 2011 to about December 2011, Plaintiff JANE DOE #1 worked in C&C Farms' fields during the day for approximately 10 hours per day and in the packing house for an additional six hours during the night shift, with only a 30-minute break between the field and packing house shifts. Plaintiff JANE DOE #1 was not paid the applicable minimum wage, much less the higher hourly wage she had been promised for all the hours she worked and provided services to all of the Defendants.

50.     Plaintiff JANE DOE #2 worked at C&C Farms between approximately July 2011 and February 2012. For the first five months, Plaintiff JANE DOE #2 worked approximately 14 to 17 hours a day, seven days a week. For the final two months, Plaintiff JANE DOE #2 worked approximately 10 hours a day, seven days a week. Plaintiff JANE DOE #2 was not

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

paid the applicable minimum wage, much less the higher hourly wage she had been promised for all the hours she worked and was in service to all of the Defendants.

51.     When JANE DOE # 2 complained to Cordero about Defendants' failure to properly pay her, Cordero refused to do anything about it, telling her in Spanish that the Defendants failure to pay their workers properly "was not his problem."

**Force, Threats of Force, and Threats of Serious Harm as
Means to Coerce Plaintiffs' to Continue to
Provide Labor and Services**

52.     Defendants Cordero and Reyes Tapia-Ortiz routinely carried and/or brandished guns in the transport vans to and from C&C Farms and in the C&C Farms fields in order to intimidate and display power over Plaintiffs and other workers, to discourage questions about late and low pay, to force workers to increase production, and to punish workers for taking bathroom or short breaks from the sweltering Florida sun.

**Cordero's Intimidating Acts**

53.     Between approximately October 2009 and early 2010 at C&C Farms, non-defendant crew leader N.C. warned Plaintiff JOHN DOE #1 and other workers in Spanish that Cordero had guns, was erratic, and they "should exercise caution" in complaining about pay shortages or working conditions.

54.     In or about late 2009 or early 2010, a worker from Guatemala told JOHN DOE #1 that Cordero had told the Guatemalan and other workers who were also laboring in C&C Farms' fields that the workers should be happy that they are in this country "because they can eat and have money." The Guatemalan worker told JOHN DOE #1 that Cordero had made a

12

NY 75292778v1

gun gesture as though he was shooting a worker and then threatened the workers that he could "fuck them up" and throw them into a ditch where the alligators could eat them.

55.     Beginning in or about early 2010, Cordero regularly wore a gun in the waistband of his pants while he supervised workers in the C&C Farms fields.  The weapon was always noticeable to the workers as a bulge in his waistband, which caused them to be afraid and even more reluctant to complain about late or low pay and bad working conditions.

56.     Beginning in or about early 2010, Cordero regularly threatened and yelled obscenities and racial slurs at Plaintiffs JOHN DOE #1 and JOHN DOE #2 and other workers laboring in the C&C Farms fields, sometimes for no apparent reason but seemingly solely for the purpose of causing humiliation or fear.  On other occasions, when accusing workers of not picking fast enough or missing a single vegetable, Cordero would simultaneously lift his shirt to expose his pistol while yelling obscenities and slurs.

57.     Beginning in or about early 2010, Cordero transported a gun in his pickup truck to the C&C Farms' fields, displaying it to Plaintiffs JOHN DOE #1 and JOHN DOE #2 and the other workers in order to further intimidate them.

58.     Between January 2010 and May 2010, during work hours in C&C Farms' fields, Cordero threatened in Spanish that he could "kill a worker and simply leave the body in a ditch."

59.     In or about February 2010, Cordero, in the presence of Plaintiff JOHN DOE #1 and other workers, raised and shook his gun in the air while threatening harm to any worker who scratched his truck while they were removing work tools.

60.     In early 2010, Cordero threatened to shoot a worker, who was leaning against his truck while it was parked in the field during the work day, if the worker damaged the truck.

13

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

61.     In early 2011, Plaintiff JOHN DOE #2, who had missed work for health reasons, was told later that day by another worker that Cordero had fired his gun in the air because he was enraged at one of the workers.

62.     In early 2010, Cordero menacingly hoisted his firearm in the air while claiming that Plaintiff JOHN DOE #1 and the other workers were not working quickly enough.

63.     As a result of the events set forth above, Plaintiffs JOHN DOE #1 and JOHN DOE #2 were fearful that Cordero would shoot them and discussed that fear with the other workers, who shared that fear. The workers agreed that they would use sticks and shovels, the only defenses available to them, in the event Cordero attempted to shoot them.

### Tapia-Ortiz's Use of Guns to Intimidate and Coerce Workers

64.     In 2011, Tapia-Ortiz regularly kept a rifle either openly displayed or stashed under the driver's seat of his transport van. On occasion, Tapia-Ortiz would remove the gun and bring it to the field, banging on the barrel, to scare the workers. He also carried a pistol in the van's glove compartment, and he would remove it in the presence of the workers when they arrived at C&C Farms and place it in his waistband. He would continue to carry the pistol throughout the remainder of the day while supervising Plaintiffs and other workers in the C&C Farms fields.

65.     Defendant Cordero knew Tapia-Ortiz carried a pistol in the workplace in the presence of workers because Tapia-Ortiz had it in his waistband, obviously bulging, when JANE DOE #2 witnessed him on occasions when he entered Cordero's office. Tapia-Ortiz would often move his rifle from one van to another in the presence of other workers in the parking lot outside of the packinghouse.

14

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

66.     In 2011, approximately three weeks after Plaintiff JOHN DOE #3 began working for Tapia-Ortiz, Plaintiff JOHN DOE #3 questioned Tapia-Ortiz about why he had not been paid for all the hours he had worked for C&C Farms.  In response, Tapia-Ortiz removed two guns from under the driver's seat of the white worker transport van that was parked at C&C Farms and twirled those guns in front of Plaintiff JOHN DOE #3, causing Plaintiff JOHN DOE #3 to be fearful and therefore continue to work, and not ask questions or complain again.

67.     In early 2011, days after a confrontation with other workers, and while transporting Plaintiff JOHN DOE #4 and other workers to C&C Farms, Tapia-Ortiz brandished his pistol and threatened the workers in Spanish, stating that if were are any problems, "he had a pistol and he would not be the one to die."

68.     In early 2011, Plaintiff JOHN DOE #4 was told by a Mexican worker that Tapia-Ortiz took out his pistol when some workers were complaining and told the workers in Spanish to stop complaining or "someone would get hurt."

69.     While Plaintiff JOHN DOE #4 was employed by Tapia-Ortiz and C&C Farms, Tapia-Ortiz often told Plaintiff JOHN DOE #4 and the other workers in Spanish that they were not to complain, as he was not the boss, and he would "beat up" workers who complained.

70.     Plaintiff JOHN DOE #4 was afraid of Tapia-Ortiz and believed Tapia-Ortiz's threats that he would beat up or shoot a worker who offended him.

71.     In or about late 2011 or early 2012, Tapia-Ortiz brandished and aimed his gun with his finger on the trigger while at C&C Farms in order to intimidate Plaintiff JANE DOE #2 and other workers.

15

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

72.     Tapia-Ortiz regularly threatened the workers at C&C Farms, once boasting in Spanish in the presence of JANE DOE #1 that killing one of the workers would be "just like killing a dog."

73.     On several occasions in 2011, Tapia-Ortiz pistol-whipped his common law wife at their residential trailer in Moore Haven, Florida in the presence of Plaintiff JANE DOE #1 and her boyfriend who also shared that trailer.  Those pistol-whippings caused JANE DOE #1 and other workers who subsequently heard about the incidents and witnessed his wife's injuries, to be afraid of Tapia-Ortiz, which further contributed to the climate of fear in the workplace.

74.     In 2011, Tapia-Ortiz also regularly took out, cleaned and loaded his pistol in front of JANE DOE #1 and JOHN DOE #5, causing JANE DOE #1 to be fearful for her life.

75.     In 2011, after Tapia-Ortiz had beaten his common law wife, she took JANE DOE #1 into the bedroom to show JANE DOE #1 the gun under Tapia-Ortiz's pillow, explaining that he had used it to beat her, causing JANE DOE #1 to fear that Tapia-Ortiz would shoot her during the night.

76.     In or about August 2011, JANE DOE #2 observed Tapia-Ortiz loading his gun. When she asked why he carried a gun in the fields, Tapia-Ortiz responded in Spanish that it was to "scare the workers while they were working."

77.     Plaintiff JANE DOE #2 and the other workers were afraid of Tapia-Ortiz and his guns, and their fear kept them from complaining about the unpaid wages and working conditions.

78.     In or about September or October 2011 at C&C Farms, Tapia-Ortiz brandished his pistol when Plaintiff JANE DOE #2 told Tapia-Ortiz that she no longer wanted to work at C&C Farms because she was not being paid what was due her.  Tapia-Ortiz threatened in

16

Spanish to "find and kill" Plaintiff JANE DOE #2 if she stopped working for him. Tapia-Ortiz also pulled his gun out and told her that she could not go anywhere because he had a gun.

79.     On several occasions between 2010 and 2011, Tapia-Ortiz engaged in threatening conduct and remarks towards JOHN DOE #5 including:

    i.      While JOHN DOE #5 was driving, Tapia-Ortiz called him and told JOHN DOE #5 he should be careful because "you never know what can happen to you." Tapia-Ortiz was very angry with JOHN DOE #5 during this time and JOHN DOE #5 considered this a threat.

    ii.     While holding his rifle, Tapia-Ortiz threatened JOHN DOE #5 by telling him to be careful because he did not have family in this country.

    iii.    While working in the fields in the spring of 2011, Tapia-Ortiz angrily remarked to JOHN DOE #5 that he could kill JOHN DOE #5 in the street when they were alone.

80.     In addition to these incidences, which occurred while JOHN DOE #5 was working at C&C Farms, other incidences occurred between 2008-2010 while JOHN DOE #5 was working at other farms with Tapia-Ortiz that made him fearful, including:

    i.      Tapia-Ortiz's common law wife told JOHN DOE #5 that Tapia-Ortiz had illegally purchased the guns for protection in case he has problems with the workers.

    ii.     While living with Tapia-Ortiz, JOHN DOE #5 observed Tapia-Ortiz cleaning his handgun, and afterwards, Tapia-Ortiz's common law wife displayed the handgun to JOHN DOE #5 to show him that it was loaded with eight bullets.

17

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

iii. While living with Tapia-Ortiz, JOHN DOE #5 regularly heard Tapia-Ortiz beating his common law wife and afterward saw bruises on her.

iv. Tapia-Ortiz's common law wife told JOHN DOE #5 that Tapia-Ortiz threatened to kill her and hunt her down if she ever left him. She also asked JOHN DOE #5 to help her buy a cell phone so she could call for help if necessary when Tapia-Ortiz beats her.

### Tapia-Ortiz's Sexual Harassment

81. Between August 2011 and January 2012, Tapia-Ortiz sexually harassed Plaintiff JANE DOE #2 in person at C&C Farms and on the telephone by making unwelcome and unlawful sexual advances.

82. In the fall of 2011, Tapia-Ortiz solicited Plaintiff JANE DOE #2 to travel to Miami, promising to pay her more money and not to deduct payments, if she engaged in a sexual relationship with him. He offered her higher wages and special consideration in the workplace if she accepted his propositions.

83. In or about August 2011, Tapia-Ortiz grabbed her from behind and fondled her breasts.

84. Plaintiff JANE DOE #2 rejected Tapia-Ortiz' advances and threated to call the police. Tapia-Ortiz responded that the police did not care about her and that she would get deported if she attempted to contact the police.

85. In the fall of 2011, approximately fifteen days after the prior incident, Tapia-Ortiz cornered Plaintiff JANE DOE #2 and made sexual advances while she was working at a

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES · WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

secluded location among tall tomato plants at C&C Farms. When Plaintiff JANE DOE #2 resisted his advances, Tapia-Ortiz lifted his shirt to show a pistol tucked into his waistband.

86. Approximately ten days after the second incident, Tapia-Ortiz cornered Plaintiff JANE DOE #2 in the fields, grabbed her tightly, forcibly pulled her towards him, and groped her breasts and buttocks. Plaintiff JANE DOE #2 did not consent to the contact and explicitly refused his advances.

87. On another occasion, as Plaintiff JANE DOE #2 was picking crops in the fields, Tapia-Ortiz slapped her thigh in a sexual manner and fondled her buttocks and hips. Plaintiff JANE DOE #2 did not consent to the contact and explicitly refused his advances.

88. Also between approximately September 2011 and January 2012, Tapia-Ortiz threatened to cause serious injury to Plaintiff JOHN DOE #3, who was JANE DOE #2's boyfriend, if Plaintiff JANE DOE #2 continued to reject Tapia-Ortiz' advances, causing JANE DOE #2 to be anxious and worried both for her safety and for JOHN DOE #3's safety.

89. During that same time frame, Tapia-Ortiz also threatened to have Plaintiff JANE DOE # 2's boyfriend, JOHN DOE #3, deported if she reported Tapia-Ortiz' sexual advances.

**Abuse of Law**

90. On many other occasions, Tapia-Ortiz threatened to have Plaintiffs themselves deported, including:

    i. Between approximately November 2010 and January 2012, Tapia-Ortiz coerced Plaintiff JOHN DOE #3 against his will to transport workers to C&C Farms by threats in Spanish that he would have Plaintiff JOHN DOE #3 "deported" if he refused to drive and transport workers. Tapia-Ortiz told Plaintiff JOE DOE #3 that he had already arranged the

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

removal or deportation of another van driver when the van driver refused to continue employment with Tapia-Ortiz. Tapia-Ortiz suggested that he could do the same to Plaintiff JOHN DOE #3.

   ii.   During Plaintiff JANE DOE #2's employment at C&C Farms, Tapia-Ortiz threatened Plaintiff JANE DOE #2 and the other workers in Spanish that if they did not want to work for him or if they stopped working for him, "he could have them deported" because they were illegal and he would call immigration.

   iii.  In the summer or fall 2011, when Plaintiff JANE DOE #2 and other workers confronted Tapia-Ortiz about not being paid, Tapia-Ortiz responded in Spanish "that the workers can complain all they want, but no one will help them because they do not have papers."

   iv.  In or about September 2011, and on other occasions, Plaintiff JANE DOE #2 also approached Tapia-Ortiz questioning the workers' late and low wages. Once again, Tapia-Ortiz responded to Plaintiff JANE DOE #2 that the other workers could complain all they wanted, but no one would help them because "they do not have papers."

91.  In late 2011, JOHN DOE #5 was driving the van and was about to take the workers home after work in the fields when Tapia-Ortiz called him and ordered JOHN DOE #5 to take the workers to the packing house for a night shift. JOHN DOE #5 refused and took the workers home because everyone was tired. When he returned to the trailer he shared with Tapia-Ortiz, Tapia-Ortiz stormed in and yelled at him, stating that as a driver he must tell the workers what to do and that the workers are not to decide what to do on their own.

92.  In late 2011, Tapia-Ortiz had not paid Plaintiffs JANE DOE #1 and JOHN DOE #5 for over two weeks of work performed at C&C Farms. As a result, both Plaintiff

20

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

JANE DOE #1 and JOHN DOE #5 advised Tapia-Ortiz that they were quitting for another job. Tapia-Ortiz told Plaintiffs JANE DOE #1 and JOHN DOE #5 that he would not pay JANE DOE #1 and JOHN DOE #5 their back wages unless they agreed to continue working at C&C Farms. Thereafter, on or about December 21, 2011, at Tapia-Ortiz's trailer near Moore Haven, Florida, Tapia-Ortiz brandished his pistol and threatened Plaintiff JANE DOE #1 and JOHN DOE #5 in Spanish that they "would be sorry" if they stopped working for him.

93. On or about December 22, 2011, after Plaintiff JANE DOE #1 and JOHN DOE #5 terminated their employment with C&C Farms, Tapia-Ortiz made good on his threats and arranged for an unlicensed bondsman to seize Plaintiff JOHN DOE #5.

94. The unlicensed bondsman entered the bedroom of JOHN DOE #5 in the middle of the night, wearing a uniform similar to that of a police officer, and displayed a badge that looked similar to a police officer's badge. The unlicensed bondsman stated that he was seizing JOHN DOE #5, because an arrest warrant was issued for JOHN DOE #5 for failure to pay court fees. The bondsman chained JOHN DOE #5's arms and legs in the presence of JANE DOE #1 and took him to jail. Soon thereafter, JOHN DOE #5 was deported.

95. Plaintiff JANE DOE #1 was terrified by the seizure of JOHN DOE #5 and hid all that night in the nearby woods.

96. Two days later, on or about December 23, 2011, Tapia-Ortiz threatened in Spanish to burn Plaintiff JANE DOE #1 in the trailer and shut her mouth forever if she told anyone about the events that occurred on December 21, 2011.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA") Forced Labor and Attempted Forced Labor, 18 U.S.C. §§ 1589, 1594(a)

Defendants C&C Farms and Cordero

97.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

98.     Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against C&C Farms and Cordero.

99.     This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act.

100.    As set forth in detail above, in violation of 18 U.S.C. § 1589(a) and 18 U.S.C. § 1594(a), C&C Farms and Cordero knowingly obtained and provided, or attempted to obtain and provide, the labor and services of Plaintiffs JOHN DOE #1 and JOHN DOE #2:

a.      By means of force, threats of force, physical restraint, or threats of physical restraint to Plaintiffs JOHN DOE #1 and JOHN DOE #2 and others;

b.      By means of serious harm or threats of serious harm to Plaintiffs JOHN DOE #1, JOHN DOE #2, and others;

c.      By means of the abuse or threatened abuse of law or legal process; and/or

d.      By means of a scheme, plan, or pattern intended to cause Plaintiffs JOHN DOE #1 and JOHN DOE #2, to believe that if they did not perform such labor or services, then they and others would suffer serious harm or physical restraint.

101.    As a result of the above conduct of C&C Farms, Cordero, and their agents, Plaintiffs JOHN DOE #1 and JOHN DOE #2 have suffered damages in an amount to be determined at trial.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

# SECOND CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA")
Forced Labor and Attempted Forced Labor, 18 U.S.C. §§ 1589, 1594(a)

Defendants C&C Farms, Cordero and Tapia-Ortiz

102.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

103.    Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against C&C Farms, Cordero and Tapia-Ortiz.

104.    This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Act.

105.    As set forth in detail above, in violation of 18 U.S.C. § 1589(a) and 18 U.S.C. § 1594(a), C&C Farms, Cordero and Tapia-Ortiz knowingly obtained and provided, and attempted to obtain and provide, the labor and services of Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5:

      a.      By means of force, threats of force, physical restraint, or threats of physical restraint to Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, and others;

      b.      By means of serious harm or threats of serious harm to a person, namely JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, and others;

      c.      By means of the abuse or threatened abuse of law or legal process; and/or

      d.      By means of a scheme, plan, or pattern intended to cause Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 to

23

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

believe that, if they did not perform such labor or services, then they and others would suffer serious harm or physical restraint.

106. As a result of the conduct of C&C Farms, Cordero, Tapia-Ortiz and their agents, Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 have suffered damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA")
Human Trafficking into Servitude, 18 U.S.C. §§ 1590, 1595

Defendants C&C Farms and Cordero

107. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

108. Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against C&C Farms and Cordero.

109. This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Act.

110. As set forth in detail above, C&C Farms and Cordero, through their agents, knowingly recruited, harbored, transported, provided, and obtained Plaintiffs JOHN DOE #1 and JOHN DOE #2's labor and services in violation of Chapter 77, Title 18 of the United States Code.

111. As a result of the above violations, Plaintiffs JOHN DOE #1 and JOHN DOE #2 suffered damages.

## FOURTH CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA")

24

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

Human Trafficking into Servitude, 18 U.S.C. §§ 1590, 1595

Defendants C&C Farms, Cordero and Tapia-Ortiz

112.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

113.    Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against C&C Farms, Cordero and Tapia-Ortiz.

114.    This claim is brought under 18 U.S.C. § 1595 of the Trafficking Victims Protection Act.

115.    As set forth in detail above, C&C Farms, Cordero and Tapia-Ortiz, and through their agents, knowingly recruited, harbored, transported, provided, and obtained the services of Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, in violation of Chapter 77, Title 18, United States Code.

116.    As a result of the above violations, Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 suffered damages to be determined at trial.

## FIFTH CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA")
Benefitting Financially From Trafficking in Persons, 18 U.S.C. §§ 1593A, 1595(a)

Defendants C&C Farms, Cordero, and Rodriguez

117.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

118.    Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against C&C Farms, Cordero and Rodriguez.

25

119.     This claim is brought under 18 U.S.C. § 1595 (a) of the Trafficking Victims Protection Act.

120.     In violation of 18 U.S.C. § 1593A, C&C Farms, Cordero and Rodriguez knowingly benefitted, financially or by receiving anything of value, from participating in a venture which engaged in acts in violation of Section 1595 (a), namely forced labor in violation of 18 U.S.C. §1589, thereby providing and obtaining Plaintiffs' labor and services by unlawful means.

121.     As a result of the above violations, Plaintiffs JOHN DOE #1 and JOHN DOE #2 suffered damages to be determined at trial.

## SIXTH CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act of 2013 ("TVPA")
Benefitting Financially From Trafficking in Persons, 18 U.S.C. §§ 1593A

Defendants C&C Farms, Cordero, Rodriguez and Tapia-Ortiz

122.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

123.     Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against C&C Farms, Cordero, Rodriguez and Tapia-Ortiz.

124.     This claim is brought under 18 U.S.C. § 1595(a) of the Trafficking Victims Protection Act.

125.     As set forth in detail above, C&C Farms, Cordero, Rodriguez and Tapia-Ortiz knowingly benefitted, financially or by receiving anything of value, from participating in a venture which has engaged in any act in violation of Section 1595 (a), namely forced labor in

26

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

violation of 18 U.S.C. §1589, thereby providing and obtaining Plaintiffs' labor and services by unlawful means.

126.   As a result of the above violations, Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 suffered damages to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

Alien Tort Statute
28 U.S.C. § 1350
Involuntary Servitude and Forced Labor

Defendants C&C Farms, Cordero
and Tapia-Ortiz

127.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

128.   Plaintiffs, who are all aliens, bring this claim against C&C Farms, Cordero and Tapia-Ortiz.

129.   Defendants subjected Plaintiffs to involuntary servitude and/or forced labor, which are violations of the law of nations including customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

130.   For example, the Convention Concerning Forced or Compulsory Labor defines forced labor as "all work or service which is exacted from any person under the menace of any penalty and for which said person has not offered himself voluntarily."[1]

131.   As set forth in detail above, C&C Farms, Cordero, and Tapia-Ortiz engaged in acts including, but not limited to, psychological coercion, abuse and threatened abuse of the

---

[1] Art. 2, May 1, 1932, 39 U.N.T.S. 55.

27

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

legal process, and threats of physical force to exact work or service from the Plaintiffs which the Plaintiffs had not offered voluntarily.

132.    As set forth above, C&C Farms, Cordero, and Tapia-Ortiz aided and abetted the imposition of involuntary servitude and/or forced labor by directing, ordering, conspiring to commit, or aiding the imposition of involuntary servitude and/or forced labor.

133.    By aiding and abetting involuntary service and forced labor C&C Farms, Cordero and Tapia-Ortiz violated the law of nations and treaties of the United States.  Their actions are therefore actionable under the Alien Tort Statute, 28 U.S.C. § 1350

## EIGHTH CLAIM FOR RELIEF

Alien Tort Statute ("ATS")
28 U.S.C. § 1350
Human Trafficking

Defendants C&C Farms,  Cordero and Tapia-Ortiz

134.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

135.    Plaintiffs, who are all undocumented agricultural workers, bring this claim against C&C Farms, Cordero, and Tapia-Ortiz.

136.    As set forth in detail above, Defendants engaged in acts including, but not limited to, the recruitment, transportation, transfer, harboring, or receipt of Plaintiffs.  These acts were conducted through the use of or the threat of force, coercion, fraud, and deception, and the abuse of power, and were taken for the purposes of obtaining labor and services from Plaintiffs who were particularly vulnerable to such threats.

137.    By taking the actions set forth in detail above, Defendants engaged in human trafficking which is defined by the leading international instrument on the subject as:  [T]he

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

recruitment, transportation, transfer, harboring, or receipt of persons, by means of the threat or use of force or other forms of coercion, of abduction, of fraud, or deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation.[2]

138.    Human trafficking is a violation of the law of nations, including customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities and is actionable under the Alien Tort Statute, 28 U.S.C. § 1350.

139.    Aiding and abetting human trafficking is also a violation of the law of nations and treaties of the United States and is actionable under the Alien Tort Statute, 28 U.S.C. § 1350.

140.    Defendants C&C Farms, Cordero, and Tapia-Ortiz aided and abetted human trafficking by directing, ordering, conspiring to commit, or aiding human trafficking, to Plaintiffs' detriment, who therefore seek appropriate damages.

## NINTH CLAIM FOR RELIEF

Human Trafficking, Fla. Stat. §§ 772.103, 772.104(1) and (2)

Defendants C&C Farms and Cordero

141.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

---

[2] The Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime, art. 1, Nov. 15, 2003, 55 U.N. GAOR Supp. (No. 49) at 60, U.N. Doc. A/45/49 (Vol. I) (2001) 40 I.L.M. 335.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

142. Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against C&C Farms and Cordero.

143. This claim is brought under Fla. Stat. § 772.104(2) which provides a civil remedy for persons injured by human trafficking.

144. C&C Farms and Cordero formed and were associated with an enterprise that, through the pattern of criminal activity described above, used coercion and fraud to obtain labor and services from Plaintiffs and other undocumented foreign nationals, in violation of Section 787.06(3)(c), Fla. Statutes.

145. As a result of C&C Farms and Cordero's violations, Plaintiffs JOHN DOE #1 and JOHN DOE #2 were injured due to human trafficking and are entitled to damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

Human Trafficking, Fla. Stat. §§ 772.103, 772.104(2)

Defendants C&C Farms, Cordero and Tapia-Ortiz

146. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

147. Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against C&C Farms, Cordero and Tapia-Ortiz.

148. This claim is brought under Fla. Stat. § 772.104(2), which provides a civil remedy for persons injured by human trafficking.

149. C&C Farms, Cordero and Tapia-Ortiz formed and were associated with an enterprise that through the pattern of criminal activity described above, used coercion to obtain

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

labor and services from Plaintiffs and other undocumented foreign nationals, in violation of Section 787.06(3)(c), Florida Statutes.

150.    As a result of C&C Farms, Cordero and Tapia-Ortiz's violations, Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 were injured due to human trafficking and are entitled to damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

Assault
Fla. Stat. § 95.11(3)

Defendant Cordero

151.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

152.    Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against Cordero under Fla. Stat. § 95.11(3).

153.    At all material times, Cordero, individually and through his agents, employees, and/or representatives, intended to cause apprehension of imminent harmful or offensive conduct to the Plaintiffs JOHN DOE #1 and JOHN DOE #2.

154.    At all material times, Cordero, individually and through his agents, employees, and/or representatives, had the ability to effectuate a harmful or offensive contact on Plaintiffs JOHN DOE #1 and JOHN DOE #2 or another third person.

155.    As set forth in detail above, on or about February 2010, Cordero, individually and through his agents, employees, and/or representatives, among other things, brandished a firearm in a threatening, offensive, and rude manner and threatened harm upon Defendants' employees, including Plaintiffs JOHN DOE #1 and JOHN DOE #2.

31

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

156.    As a direct and proximate result of Cordero's actions, Plaintiffs JOHN DOE #1 and JOHN DOE #2 were put in imminent apprehension of a harmful or offensive contact, including but not limited to, being shot with Cordero's loaded firearm.

157.    As a direct and proximate result of Cordero's actions, Plaintiffs JOHN DOE #1 and JOHN DOE #2 were injured.

158.    Plaintiffs JOHN DOE #1 and JOHN DOE #2 are entitled to any and all damages available to them in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

Assault
Fla. Stat. § 95.11(3)

Defendant Tapia-Ortiz

159.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

160.    Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against Tapia-Ortiz, who, at all relevant times, acted within the course and scope of his employment with C&C Farms and Cordero.

161.    Tapia-Ortiz, at all relevant times, acted knowingly and with intent to cause imminent apprehension of harmful or offensive contact upon Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5.

162.    Tapia-Ortiz, by brandishing his loaded firearms while reminding Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 of his ability to kill undocumented workers, intended to cause and did cause Plaintiffs JANE DOE #1, JANE

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 to suffer apprehension of an immediate harmful contact.

163. At all relevant times, Tapia-Ortiz had the ability to effectuate the harm while making the threats to Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5.

164. Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 are entitled to any and all damages available to them in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF

Battery
Fla. Stat. § 784.03

Defendant Tapia-Ortiz

165. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

166. Plaintiff JANE DOE #2 brings this claim against Tapia-Ortiz under Fla. Stat. § 784.03.

167. At all relevant times, Plaintiff JANE DOE #2 was an employee of C&C Farms, under the supervision of Tapia-Ortiz.

168. As set forth in detail above, Tapia-Ortiz, intentionally inflicted harmful and/or offensive contact upon Plaintiff JANE DOE #2.

169. In addition, at other times throughout the course of Plaintiff JANE DOE #2's employment with C&C Farms, Tapia-Ortiz often touched Plaintiff JANE DOE #2 against her will, including but limited to, wrapping his arms around her from behind and/or slapping her leg

33

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES · WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

in a suggestive and personal manner, in combination with his suggestions of engaging in sexual relations.

170.    In or about September 2011 and through Plaintiff JANE DOE #2's period of employment with C&C Farms, Tapia-Ortiz owed a duty of reasonable care not to create in the mind of Plaintiff JANE DOE #2 a reasonable apprehension of fear of imminent harm.

171.    In or about September 2011 and through Plaintiff JANE DOE #2's period of employment with C&C Farms, Tapia-Ortiz owed a duty of reasonable care to refrain from intentionally inflicting harmful or offensive contact with Plaintiff JANE DOE #2.

172.    Tapia-Ortiz breached his duties of reasonable care to Plaintiff JANE DOE #2 when he created in the mind of Plaintiff JANE DOE #2 a reasonable apprehension or fear of imminent harm and unwanted physical contact by, among other things: brandishing a weapon; physically advancing toward her; physically threatening her by using a weapon; propositioning her for sex and invitations for overnight trips, and touching her in an unwanted, offensive, or harmful manner.

173.    At all times, Plaintiff JANE DOE #2 repeatedly rejected Tapia-Ortiz's sexual propositions and suggestive touching.

174.    Tapia-Ortiz, without any encouragement or enticement by Plaintiff JANE DOE #2, placed Plaintiff JANE DOE #2 in apprehension of great and immediate bodily harm and offensive contact with his conduct.

175.    Tapia-Ortiz's actions were willful, wanton, and malicious.

176.    As a direct and proximate result of one or more of the foregoing acts or omissions of Defendant Reyes Tapia-Ortiz, Plaintiff JANE DOE #2 was emotionally injured by becoming

34

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

upset, shamed, embarrassed, and fearful. Plaintiff JANE DOE #2 is entitled to damages in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

False Imprisonment
Fla. Stat. § 787.02

Defendant Tapia-Ortiz

177.    Plaintiff JOHN DOE #5 re-alleges and incorporates by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

178.    Plaintiff JOHN DOE #5 brings this claim against Defendant Tapia-Ortiz.

179.    Defendant Tapia-Ortiz, through his co-conspirator, agent, and/or representative, the unlicensed bail bondsman who seized JOHN DOE #5 on December 22, 2011, acted with malicious intent to confine or restrain JOHN DOE #5

180.    Plaintiff JOHN DOE #5 did not consent to the confinement imposed upon him by Defendant Tapia-Ortiz, through his co-conspirator, agent, and/or representative, the unlicensed bail bondsman.

181.    Defendant Tapia-Ortiz, through his co-conspirator, agent, and/or representative, the unlicensed bail bondsman, had no authority to confine and restrain JOHN DOE #5, nor was the confinement and restraint imposed upon JOHN DOE #5 otherwise privileged.

182.    As a result of Defendant Tapia-Ortiz's actions, through his co-conspirator, agent, and/or representative, JOHN DOE #5 suffered severe emotional distress and injury, including the detention and forced deportation to Mexico.

183.    JOHN DOE #5 is entitled to any and all damages available to him in an amount to be determined at trial.

35

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

## FIFTEENTH CLAIM FOR RELIEF

Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")
29 U.S.C. §§ 1801, *et seq.*

Defendants C&C Farms, Cordero and Rodriguez

184.    Plaintiffs JOHN DOE #1 and JOHN DOE #2 re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

185.    Plaintiffs JOHN DOE #1 and JOHN DOE #2 bring this claim against C&C Farms, Cordero and Rodriguez.

186.    At all relevant times, Plaintiffs JOHN DOE #1 and JOHN DOE #2 engaged in some or all of the following agricultural work: planting, weeding, and picking, agricultural or horticultural products for C&C Farms.

187.    Defendants failed to provide the Plaintiffs JOHN DOE #1 and JOHN DOE #2 at the time of their recruitment with a written disclosure of the terms and conditions of employment in violation of 29 USC § 1821(a).

188.    C&C Farms, Cordero and Rodriguez also failed to make, keep, and maintain records regarding the work of Plaintiffs JOHN DOE #1 and JOHN DOE #2 as required by AWPA, 29 U.S.C. §§ 1821(d)(1), 1831(c)(1).  Among other things, the Defendants failed to make, keep, and maintain records accurately reflecting the number of compensable hours worked, the basis on which wages are paid, the specific sums withheld from the wages, and the purpose of each sum withheld.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

189. As set forth in detail above, C&C Farms, Cordero and Rodriguez, failed to pay Plaintiffs JOHN DOE #1, JOHN DOE #2 wages when they were due in violation of 29 U.S.C. § 1822(a).

190. By failing to comply with their working arrangement, with Plaintiffs JOHN DOE # 1 and JOHN DOE #2 C&C Farms, Cordero and Rodriguez violated 29 USC § 1822(c).

191. Upon information and belief, Defendants utilized the services of non-defendant crew leader N.C., who was not a registered farm labor contractor, without first taking reasonable steps to determine that he possessed a valid certificate of registration authorizing the activity for which the contractor was utilized, in violation of 29 U.S.C. § 1811(b).

192. As agricultural employers, Defendants failed to post and maintain a poster provided by the Secretary of Labor enumerating Plaintiffs' rights and protections under AWPA, in violation of 29 U.S.C. § 1821(b).

193. The violations of AWPA as set forth above were the natural consequence of the conscious and deliberate actions of the agricultural employer Defendants and were intentional within the meaning of AWPA, 29 U.S.C. § 1854(c)(1).

194. Upon information and belief, the agricultural employer Defendants' failure to comply with AWPA caused the Plaintiffs to suffer damages to be determined at trial.

## SIXTEENTH CLAIM FOR RELIEF

Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")
29 U.S.C.§§ 1801, *et seq.*

Defendants C&C Farms, Cordero, Rodriguez,
and Tapia-Ortiz

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

195. Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

196. Plaintiffs JANE DOE #1, JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 bring this claim against Defendants C&C Farms, Cordero and Rodriguez.

197. Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3, JOHN DOE # 4, and JOHN DOE #5 bring this claim against unlicensed farm contractor, Tapia-Ortiz.

198. As set forth above, at all relevant times, Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 engaged in some or all of the following agricultural work: planting, weeding, and picking of agricultural or horticultural products for C&C Farms.

199. Tapia-Ortiz engaged in farm labor contracting activities without a valid certificate of registration in violation of 29 U.S.C. § 1811(a) and (c).

200. By failing to provide the Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 at the time of recruitment with a written disclosure of the terms and conditions of employment, Tapia-Ortiz and the other Defendants as joint employers violated 29 USC § 1821(a).

201. As set forth above, Tapia-Ortiz and the other Defendants as joint employers, knowingly gave false and misleading information to Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 in violation of 29 U.S.C. § 1821(f).

202. By failing to comply with the working arrangements agreed to by Plaintiffs, Tapia-Ortiz and the other Defendants as joint employers violated 29 USC § 1822(c).

38

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

203.    Tapia-Ortiz and other Defendants as joint employers failed to pay Plaintiffs JANE

DOE #1 JANE DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 wages when they

were due in violation of 29 U.S.C. § 1822(a).

204.    Tapia-Ortiz and the other Defendants as joint employers failed to make, keep, and

preserve complete payroll records for Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3,

JOHN DOE #4, and JOHN DOE #5 including, but not limited to, records documenting

accurately the hours worked and the basis on which wages are paid, in violation of 29 U.S.C. §

1821(d)(1).

205.    By failing to provide Plaintiffs JANE DOE #1 JANE DOE #2, JOHN DOE #3,

JOHN DOE #4, and JOHN DOE #5 with itemized written statements of information during

each pay period, Tapia-Ortiz and the other Defendants as joint employers violated the

requirements set forth in 29 U.S.C. § 1821(d)(1).

206.    Farm labor contractor Tapia-Ortiz and the other Defendants as joint employers,

failed to ensure that vehicles used to transport Plaintiffs JANE DOE #1 JANE DOE #2, JOHN

DOE #3, JOHN DOE #4, and JOHN DOE #5 conformed to the standards prescribed by the

Secretary and other applicable Federal and State safety standards in violation of 29 U.S.C. §

1841(a) and (b).  Among other things, the vehicles did not provide securely fastened seats for

each passenger.

207.    The violations of AWPA set forth above were the natural consequence of the

conscious and deliberate actions of Tapia-Ortiz and the other Defendants as joint employers,

and were intentional within the meaning of AWPA, 29 U.S.C. § 1854(c)(1).

208.    The Defendants' failure to comply with AWPA caused the Plaintiffs to suffer

damages to be determined at trial.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

## SEVENTEENTH CLAIM FOR RELIEF

Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")
29 U.S.C. §§ 1801, *et seq.*

Defendants C&C Farms, Cordero, Rodriguez,
and Tapia-Ortiz

209.     Plaintiffs JANE DOE #1 re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

210.     Plaintiffs JANE DOE #1 and JOHN DOE #5 bring this claim against agricultural employers and joint employers C&C Farms, Cordero, Rodriguez, and crew leader Tapia-Ortiz.

211.     Plaintiffs JANE DOE #1 and JOHN DOE #5 were housed in a dwelling that did not comply with state and federal housing safety and health requirements, in violation of 29 U.S.C. §1823(a).

212.     Tapia-Ortiz failed to post a current certificate of occupancy at the housing occupied by Plaintiffs JANE DOE #1 and JOHN DOE #5, in violation of AWPA, 29 U.S.C. § 1823(b).

213.     The violations of AWPA as set forth above were the natural consequence of the conscious and deliberate actions of farm labor contractor Tapia-Ortiz and were intentional within the meaning of AWPA, 29 U.S.C. § 1854(c)(1).

214.     Tapia-Ortiz's failure to comply with AWPA caused the Plaintiffs JANE DOE #1 and JOHN DOE #5 to suffer damages.

215.     Pursuant to 18 U.S.C. § 1854(c), for each violation of AWPA Plaintiffs JANE DOE #1 and JOHN DOE #5 are entitled to recover from Defendants, jointly and severally, actual damages or up to $500 per violation in statutory damages, for each year worked.

40

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

# EIGHTEENTH CLAIM FOR RELIEF

Fair Labor Standards Act ("FLSA")
19 U.S.C. §§ 201, *et seq.*

Defendants C&C Farms, Cordero, Rodriguez,
and Tapia-Ortiz

216.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs #1 through #96 as if set forth fully herein.

217.    Plaintiffs bring this claim against all Defendants, individually and as joint employers, under 29 U.S.C. § 216(b) of the Fair Labor Standards Act.

218.    As set forth above, Plaintiffs were employed by Defendants in an enterprise that had two or more employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

219.    Tapia-Ortiz and the other Defendants failed to pay minimum wages to Plaintiffs for all hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 206, *et seq.*, and its implementing regulations.

220.    Plaintiffs' housing and transportation were primarily for the benefit of Defendants.

221.    Defendants' deductions from Plaintiffs' wages for housing, food, and transportation cumulatively brought Plaintiffs' wages below the statutory minimum.

222.    Defendants failed to pay Plaintiffs for each hour of work that they performed.

223.    Defendants' violations of the FLSA were willful, in that the Defendants knew or showed reckless disregard for the very possibility that their conduct was prohibited under the FLSA.

41

NY 75292778v1

224. At all relevant times, Defendants were aware or should have been aware of the FLSA's requirements, but failed to take the necessary affirmative actions to comply with these requirements.

225. Defendants' failure to comply with the FLSA protections caused Plaintiffs to suffer loss of wages and interest thereon.

## NINETEENTH CLAIM FOR RELIEF

Negligent Hiring, Retention, and Supervision

Defendant C&C Agricultural Farms, Cordero, and Rodriguez

226. Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs #1 through #96 as if set forth fully herein.

227. Plaintiffs bring this claim against Defendants C&C Farms, Cordero, and Rodriguez.

228. Defendants were negligent in hiring, supervising, and retaining their employees, crew leader N.C. and Defendant Reyes Tapia-Ortiz.

229. The above-named Defendants owed a duty to Plaintiffs to monitor Defendant Tapia-Ortiz to ensure he properly performed his duties, to be aware of his unfitness for their positions with Defendant C&C Farms, and to take corrective action in light of said unfitness.

230. Plaintiffs were within the foreseeable zone of risk created by the negligent hiring, supervision, and retention of Defendant Tapia-Ortiz because Defendant Tapia-Ortiz's job was to recruit, supervise, transport, and house Defendants' employees, including Plaintiffs.

231. Defendants breached these duties by failing to adequately monitor Defendant Tapia-Ortiz's performance, failing to investigate Plaintiffs' and other employee's complaints

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

regarding Defendant Tapia-Ortiz, and by failing to take corrective action in light of knowledge the above-named Defendants had, or should have had, regarding Defendant Tapia-Ortiz's unfitness for the job.

232. In his position with Defendants C&C Farms, Cordero, and Rodriguez, Defendant Tapia-Ortiz caused injury to Plaintiffs, including but not limited to: inducing Plaintiffs to work for C&C Farms through fraudulent or negligent misrepresentations of the terms and conditions of employment; forcing or coercing Plaintiffs into working against their will; failing to pay Plaintiffs properly; transporting Plaintiffs in unsafe and overcrowded conditions; and causing them severe emotional distress by threatening Plaintiffs with physical harm, death, arrest, detention, deportation, and/or revealing their immigration status; subjecting them to verbal abuse; brandishing firearms in a threatening manner during transit or at the workplace; and forcing or coercing Plaintiffs into working long hours with insufficient rest.

233. Plaintiffs' injuries occurred, in part, on premises secured by Defendants for employment purposes.

234. The above-named Defendants were aware, or should have been aware, of Defendant Tapia-Ortiz's harmful and unlawful conduct.

235. Defendants were made aware of Defendant Tapia-Ortiz's harmful conduct by multiple complaints from Defendants' employees, including but not limited to Plaintiff JANE DOE #1, made directly to Defendant Cordero.

236. A reasonably prudent person would have investigated or taken corrective action against Defendant Tapia-Ortiz in light of employee complaints regarding conduct described herein because these complaints were directly related to Defendant Tapia-Ortiz's fitness for his position with C&C Farms.

43

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

237. Defendants' breach of their duties to monitor Defendant Tapia-Ortiz and to take corrective action when notified of their unfitness for his position was a proximate cause of Plaintiffs' injuries.

238. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a.     Judgment in favor of each Plaintiff on all relevant counts of the Complaint;

b.     Awarding each of the Plaintiffs damages, including as appropriate for the respective claim, compensatory and punitive damages;

c.     Treble damages or threefold the amount gained from human trafficking as authorized by Fla. Stat. § 772.104(1) and (2);

d.     Liquidated damages as authorized by the FLSA, 29 U.S.C. § 216;

e.     Attorneys' fees and costs; and

f.     Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on each and every claim set forth herein.

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

Dated: September 25, 2014.

Respectfully submitted,

**STROOCK & STROOCK & LAVAN, LLP**
200 South Biscayne Boulevard
Suite 3100
Miami, Florida 33131-5323
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

By: /s/ Robert T. Wright, Jr.
Robert T. Wright, Jr.
Florida Bar No. 185525
rwright@stroock.com

Professor Arturo Carrillo (*pro hac vice*)
Director, International Human Rights Clinic
New York Bar Registration No. 4004040
District of Columbia Bar No. 482581
George Washington University Law School
2000 G Street, NW
Washington, D.C. 20052
Telephone: (202) 994-4946
acarrillo@law.gwu.edu

Susan L. French (*pro hac vice*)
Senior Staff Attorney
International Human Rights Clinic
Virginia Bar No. 14141
George Washington University Law School
2000 G. Street, NW
Washington, D.C. 20052
Telephone: (202) 202-7397
sfrench@law.gwu.edu

*Counsel for Plaintiffs*

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served the documents directed in the September 25, 2014 directive to all parties of record on the attached Service List.

By: /s/ Robert T. Wright, Jr.
Robert T. Wright, Jr.
Florida Bar No. 185525
rwright@stroock.com
**STROOCK & STROOCK & LAVAN, LLP**
200 South Biscayne Boulevard
Suite 3100
Miami, Florida 33131-5323
Telephone: (305) 358-9900
Facsimile: (305) 789-9302

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1

## SERVICE LIST

Law Offices of Bennett M. Miller, P.A.
1606 Redwood Dr.
Tallahassee, FL 32301
Telephone: (850) 443-4010
Fax Number: (850) 807-5070
bennettmmiller@yahoo.com

*Counsel for Defendants C&C Farms, Carlos Rodriguez and Ernesto Cordero*

Reyes Tapia-Ortiz
657 D Avenue
Moore Haven, Florida 33471

*Defendant*

STROOCK & STROOCK & LAVAN LLP • MIAMI • NEW YORK • LOS ANGELES • WASHINGTON, DC
200 SOUTH BISCAYNE BOULEVARD, SUITE 3100, MIAMI, FL 33131-5323 TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

NY 75292778v1